Clyde H. Loper v. Commissioner. Lillie May Loper v. Commissioner.
Clyde H. Loper v. Commissioner
Docket Nos. 23271, 23272, 26412, 26413.
United States Tax Court
1951 Tax Ct. Memo LEXIS 362; 10 T.C.M. (CCH) 23; T.C.M. (RIA) 51005; January 11, 1951
S. L. Mayo, Esq., 625 Republic Bank Bldg., Dallas, Tex., for the petitioners. John P. Higgins, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion These proceedings, consolidated for hearing, involve deficiencies in income taxes of each of the petitioners for the years 1945, 1946 and 1947, in the respective amounts of $74.67, $204.53 and $568.19. Petitioners are husband and wife. They filed separate returns for each of the years involved on the community property basis. The term "petitioner" will be used hereinafter to refer to the husband, Clyde H. Loper. The questions in issue in all the proceedings are (1) whether the gains on the sale of real estate are taxable as *363 capital gains or as ordinary income, and (2) the rate to be used in computing depreciation deductions on certain real estate improvements. Findings of Fact The petitioners are residents of Dallas, Texas. They filed their returns for the years involved with the collector of internal revenue for the second district of Texas. The petitioner for many years has been connected with the firm of Robert Ralston & Company, which conducts a mortgage and loan business at Dallas, Texas. He was first employed by the firm as bookkeeper. About 1910 he became a partner and later manager of the firm. Since 1945 he has operated the business as sole proprietor. The business of the firm is and at all times has been the purchase and sale of vendor's lien notes. It operates principally with capital furnished by British and Scottish investors. Petitioner's duties have consisted of inspecting properties, placing and servicing loans, arranging foreclosures when necessary, and looking after other matters relating to the conduct of the mortgage and loan business. The firm did not buy or sell real estate. The petitioner and other individual members of the firm did occasionally purchase parcels of real estate *364 in their own right and with their individual funds. In his returns for 1945, 1946 and 1947, the petitioner reported purchases and sales of tee following properties: Date
Sale
Gain
Year
Description of property
purchased
price
or loss
1945
5510 Hudson
1- 3-45
$ 5,750.00
$ 250.00
2925 Fairmount
1-19-09
5,000.00
2,846.50
4710 Virginia
1- 3-45
4,250.00
806.94
2331 Throckmorton
2-14-45
3,250.00
738.65
Burbank Gardens
7-26-44
2,750.00
1,349.93
4423 Metropolitan (Runner)
Feb. 1941
1,600.00
942.88
2316 Caddo
Jan. 1940
4,000.00
3,088.02
1914-1916 Forest
6-30-44
7,500.00
1,483.45
5303 Parry
10- 1-35
4,500.00
2,594.00
814 Henderson
10- 1-35
2,100.00
1,406.55
Pike Acreage
May 1924
2,250.00
2,095.00
Llano
3- 9-25
750.00
( 889.91)
Wilson Farm
Dec. 1943
2,500.00
239.75
1946
Lenore
11-20-45
$ 3,300.00
$ 508.42
1401-1403 Metropolitan
2-21-41
5,000.00
3,323.39
2630 Laclede
3-26-45
8,500.00
2,162.24
3218 Carlisle
2-13-46
8,500.00
2,230.38
1101-1103 Clarendon
10- 7-41
6,700.00
4,506.55
714 Hollywood
6-27-46
4,500.00
376.30
2609-2611 Laclede
5-29-46
6,000.00
1,575.50
Laclede
5-29-46
2,100.00
1947
Burlington
9-15-44
10,007.55
5,973.25
Melba
8- 6-46
7,500.00
1,926.38
Brownlee
5- 6-47
3,350.00
243.60
Peabody
6- 6-47
7,500.00
1,131.25
Carlisle
2-19-47
9,000.00
1,904.35
Lemmon
1- 1-47
10,500.00
69.95
*365 Most of the properties held or acquired by petitioner during the taxable years were rental properties. Petitioners reported rental income during 1945, 1946 and 1947, as follows: Gross
Net
Year
Rental
Rental
1945
$4,610.18
$ 775.29
1946
6,416.15
2,076.00
1947
7,940.87
1,667.60
During the taxable years petitioner devoted all but a small portion of his time to the mortgage and loan business of Robert Ralston & Company. He reported income from that business of $5,977.05 in 1945, $14,591.26 in 1946, and $5,495.73 in 1947. He devoted only a small portion of his time to his individual real estate transactions during that period. The petitioner held a real estate dealer's license, as required under the laws of the State of Texas, in connection with his real estate mortgage and loan business [see Tex. Civ. Stat., Art. 6573a, sec. 2(a)(1) and sec. 6(a), revised], but he never advertised or held himself out as a real estate dealer. He did not buy or sell properties for others and did not have any regular customers in connection with his own real estate transactions. In most instances he was approached by the property owners who wanted to sell or individuals *366 who desired to purchase the properties, or their agents. He frequently sold to rental tenants who were already in occupancy. The real estate properties which petitioner sold during the taxable years were acquired and held by him either as rental or investment properties, except in a few instances where he acquired and held title for a short time for the convenience of his firm or associates. In their returns for 1945, 1946 and 1947, the petitioners reported their gains on the sales of real estate which they had held for more than six months as capital gains. The respondent determined that petitioner was in the real estate business and that all of the gains on real estate sales are taxable as ordinary income. The depreciation issue involves four real estate properties which petitioner acquired in 1945. These were all improved properties, referred to as the Ericson properties. One was a two story building, one a duplex, and two were cottages. They were all frame construction and had been built for twenty years or more - one of them for at least forty years - when petitioner acquired them. They were in bad condition and in need of extensive repairs, which petitioner never made. *367 In his returns petitioner computed depreciation on the buildings at a composite rate of 10 per cent, based on a remaining useful life of ten years. The respondent reduced the composite rate to 5 per cent, based on a remaining useful life of twenty years, allowing $133.33 and disallowing $122.22 of the $255.55 of the depreciation claimed on the four properties in that year. The average remaining useful life of the four above described buildings at the time petitioner acquired them, without the benefit of extensive repairs, was not more than ten years. Opinion LEMIRE, Judge: The first and principal issue is whether the gains which petitioner realized in the taxable years 1945, 1946 and 1947, on the sale of real estate held for more than six months are taxable as ordinary income, as respondent has determined, or at capital gain rates, as reported by the petitioners in their returns. Respondent contends that petitioner was engaged in the business of buying and selling real estate and that the income in question was from the sale of "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade of business" within the meaning of section 117(j)(1), Internal Revenue Code *368 . We have found above that petitioner was engaged primarily in the mortgage and loan business and that he was not a real estate dealer in the ordinary meaning of that term. That finding largely disposes of the question in issue. It is not uncommon for taxpayers to be engaged in more than one established business; and in each such business they may be engaged in selling commodities "held * * * primarily for sale to customers" within the meaning of section 117(j)(1). However, that is not the situation here. Petitioner bought real estate primarily for investment purposes and for the rental income. He never had and never sought any real estate customers. There were a few instances where he bought and sold parcels of real estate within the same year but that was not his common practice nor his real purpose. We have examined the evidence as to the circumstances of each of the sales made by the petitioner during the taxable years, and, in our opinion, it supports petitioner's contention that he was not regularly engaged in the business of buying and selling real estate. The facts here closely resemble those in Nelson A. Farry, 13 T.C. 8. We said there that: "* * * where *369 the facts show clearly that the investment property is owned and held primarily as an investment for revenue and speculation, it is classed as a capital asset and not property held 'primarily for sale to customers in the ordinary course of trade or business.'" The facts here seem to bring this case within the rule of Nelson A. Farry, supra, and other like cases discussed therein. We conclude that the respondent was in error in treating petitioner's gains on the real estate sales as ordinary income rather than as capital gains. The depreciation issue is likewise determined in petitioner's favor on our finding of fact that the remaining useful life of the properties in question justified petitioner's use of a composite 10 per cent rate of depreciation. It appears that respondent's reduction of depreciation claimed in petitioner's returns was made without any inspection of the properties and without any consideration of their age or condition. The evidence adduced by petitioner is sufficient, we think, to overcome the presumption of correctness of respondent's determination. Decisions will be entered under Rule 50.